# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RUSSELL HAROLD and SEAN WILLIAMS,** on behalf of themselves and others similarly situated<br>　　　　　　**Plaintiffs,**<br><br>　　v.<br><br>**LESLIE RICHARDS,** in her official capacity as Secretary of Transportation of the Pennsylvania Department of Transportation; **LEO BAGLEY,** in his official capacity as Executive Deputy Secretary of the Pennsylvania Department of Transportation; **KURT MYERS,** in his official Capacity as Deputy Secretary for Driver and Vehicle Services of the Pennsylvania Department of Transportation; and **TOM WOLF,** in his official capacity as Governor of Pennsylvania<br>　　　　　　**Defendants.** | : : : : : : : : : : : : : : : : : : : | **CIVIL ACTION NO. 18-115** |

## MEMORANDUM OPINION

**Rufe, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　**September 25, 2018**

　　　　Plaintiffs have filed a proposed class action on behalf of Pennsylvania residents whose driver's licenses are suspended upon conviction of any offense involving controlled substances, under Pennsylvania law, federal, law, or the law of any other state, regardless of whether the offense involved a vehicle or traffic safety.[1]　Defendants, sued in their official capacities, are the governor of Pennsylvania and officials of the Pennsylvania Department of Transportation ("PennDOT"), which has the exclusive authority to suspend or revoke driver's licenses.

　　　　Plaintiffs allege that the suspension of their driver's licenses violates equal protection because it discriminates against people with drug convictions without a rational connection to a legitimate state purpose (Count One); violates procedural due process because it creates an

---

[1] Compl. [Doc. No. 1] ¶ 6 (citing 75 Pa. Const. Stat. Ann. § 1532(c)).

irrebuttable presumption against Plaintiffs, depriving them of their property rights (Count Two); and violates substantive due process because it deprives them of the fundamental right to intrastate travel without being narrowly tailored to achieve a significant government interest (Count Three).[2] Plaintiffs request declaratory and injunctive relief barring the suspension of driver's licenses for drug offenses that do not involve traffic safety and ordering the reinstatement of Plaintiffs' driver's licenses.[3]

Plaintiffs move for a preliminary injunction and to certify the following class:

All individuals whose Pennsylvania driver's licenses are currently suspended or will be suspended due to a conviction of any offense involving the possession, sale, delivery, offering for sale, holding for sale, or giving away of any controlled substance under the laws of the United States, Pennsylvania, or any other state, pursuant to 75 Pa. Cons. Stat. § 1532(c).[4]

Defendants move to dismiss the Complaint for failure to state a claim upon which relief may be granted. For the following reasons, the Court will grant the motion to dismiss and dismiss as moot the motions for a preliminary injunction and for class certification.

## II. LEGAL STANDARD

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" does not possess enough substance to show that plaintiff is entitled to relief.[5] A court may look to the facts alleged in the complaint, its attachments, and documents incorporated into the complaint by reference or explicitly relied upon in the complaint, but may not consider

---

[2] Compl. at 34-35.
[3] Compl. at 35.
[4] Pls.' Mot. Class. Certif. [Doc. No. 3] at 1.
[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

2

matters extraneous to the pleadings.[6] In determining whether a motion to dismiss should be granted the Court must consider those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[7]

Something more than a mere *possibility* of a claim must be alleged; plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[8] The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[9] The court has no duty to "conjure up unpleaded facts that might turn a frivolous . . . action into a substantial one."[10] Furthermore, courts are not bound to accept as true legal conclusions couched as factual allegations.[11]

## III. DISCUSSION

Under Pennsylvania law, PennDOT:

> shall suspend the operating privilege of any person upon receiving a certified record of the person's conviction of any offense involving the possession, sale, delivery, offering for sale, holding for sale or giving away of any controlled substance under the laws of the United States, this Commonwealth or any other state or any person 21 years of age or younger upon receiving a certified record of the person's conviction or adjudication of delinquency under 18 Pa. C.S. § 2706 (relating to terroristic threats) committed on any school property, including any public school grounds, during any school-sponsored activity or on any conveyance providing transportation to a school entity or school-sponsored activity.

---

[6] *Winer Family Trust v. Queen*, 503 F.3d 319, 328 (3d Cir. 2007); *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

[7] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[8] *Twombly*, 550 U.S. at 570.

[9] *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

[10] *Id.* at 562 (citing *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976)).

[11] *Id.* at 555, 564.

  (1) The period of suspension shall be as follows:
(i) For a first offense, a period of six months from the date of the suspension.
(ii) For a second offense, a period of one year from the date of the suspension.
(iii) For a third and any subsequent offense thereafter, a period of two years from the date of the suspension.[12]

In addition to imposing suspensions for certain traffic offenses, the statute also provides for suspensions of those convicted of certain non-driving related alcohol offenses, including the use of false identification cards.[13]

The challenged part of the statute stems from a federal law that provides that federal funds will be withheld from a state unless the 1) the state has enacted or enforced a law requiring the suspension of an individual's driver's license for at least six months upon conviction of "any drug offense;" or 2) the governor of the state submits a written certification of the governor or an adopted resolution of the legislature expressing opposition to the enactment or enforcement of such a law.[14] Plaintiffs do not challenge the federal statute in this case, but allege that 38 states no longer pursue license suspensions for drug offenders.[15]

Plaintiffs argue that the statute is invalid on its face.[16] They allege that the law disproportionately affects "people living in poor or predominantly Black neighborhoods, thus disrupting family life and making employment, healthcare, and education substantially more difficult to access."[17] Plaintiff Russell Harold, after a drug conviction in 2017 that was unrelated to driving, lost his license for two years because he had two prior convictions, including one in

---

[12] 75 Pa.C.S. § 1532(c).

[13] 75 Pa.C.S. §§ 1532(b), (d).

[14] 23 U.S.C. § 159(a).

[15] Compl. ¶ 109. Plaintiffs also allege that the federal statute "was motivated by animus toward low-level drug offenders." Compl. ¶ 108.

[16] Pls.' Opp. Mot Dismiss [Doc. No. 33] at 2.

[17] Comp. ¶ 30.

1988, before the suspension law existed.[18] Plaintiff Sean Williams alleges that he "is stopped and frisked nearly every time he leaves his home in west Philadelphia."[19] Mr. Williams was arrested three times in 2017 for carrying small amounts of marijuana.[20] Mr. Williams had a learner's permit, not a driver's license, at the time of his suspension.[21] The Complaint compellingly alleges the hardships that Mr. Harold and Mr. Williams and others suffer as a result of being unable to drive, and allege that it leads to unemployment and consequently to recidivism.

## A. Equal Protection

The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."[22] Plaintiffs allege that because drug convictions "in and of themselves" are not related to traffic safety, the only reason for the law is animus against those with drug convictions, and therefore bear no rational relationship to any legitimate state objective.[23] Plaintiffs allege that the law "singl[es] out people with drug convictions for additional punishment" without suspending licenses for numerous offenses that pose a threat to public safety, "such as public intoxication, speeding, failing to properly secure a child in a car seat, texting and driving, or failing to yield to a pedestrian."[24] Plaintiffs further allege that the law does not reduce or deter crime, which are properly the subject of criminal law in any event, and instead decreases public safety by diverting law-

---

[18] Compl. ¶¶ 34-36.

[19] Compl. ¶ 53.

[20] Compl. ¶¶ 54-55. The Complaint does not specifically allege that each arrest resulted in a conviction.

[21] Compl. ¶ 56.

[22] U.S. Const. amend. XIV, § 1.

[23] Compl. ¶¶ 92-93.

[24] Compl. ¶ 88-89.

5

enforcement attention from driving offenses.[25] They allege that targeting drug offenders is an impermissibly broad classification, and targets an unpopular group.[26] Moreover, Plaintiffs allege that drug convictions capture "impoverished persons and racial minorities at a disproportionate rate."[27]

Although Plaintiffs argue that certain groups are disproportionately affected by the law, they specifically "do not challenge the license suspension scheme as racially discriminatory,"[28] and the law does not classify individuals based upon "inherently suspect distinctions such as race, religion, or alienage."[29] Therefore, rational basis review applies, which "is a very deferential standard. It is met if there is any reasonably conceivable state of facts that could provide a rational basis for the differing treatment."[30] As the Supreme Court has explained:

> [R]ational-basis review in equal protection analysis is not a license for court to judge the wisdom, fairness, or logic of legislative choices. Nor does it authorize the judiciary to sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines. For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. Further, a legislature that creates these categories need not actually articulate at any time the purpose or rationale supporting its classification. Instead, a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.
>
> A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. A legislative choice is not subject to

---

[25] Compl. ¶¶ 98-99.

[26] Compl. ¶ 102, 106.

[27] Compl. ¶ 120.

[28] Compl. ¶ 118.

[29] *Nat'l Ass'n for the Advancement of Multijurisdiction Practice v. Castille*, 799 F.3d 216, 219 (3d Cir. 2015) (quotation marks and citation omitted).

[30] *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146,156 (3d Cir. 2018).

courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data. A statute is presumed constitutional, and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record. Finally, courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations – illogical, it may be, and unscientific.[31]

Thus, as long as the standard of rationality "finds[s] some footing in the realities of the subject addressed by the legislation," it will be upheld.[32] Plaintiffs argue that the suspension law is invalid as motivated by animus against people convicted of drug use, and that a desire to harm a politically unpopular group is not a legitimate governmental interest. But the cases cited by Plaintiffs do not support an argument that the law violates equal protection. The law does not, for example, regulate, proscribe, or otherwise interfere with where or with whom Plaintiffs may live[33] or with whom they may enter into intimate relationships.[34] Instead, the law bars Plaintiffs from operating a motor vehicle for a defined period, and does so as a result of Plaintiffs' actions in violation of the relevant criminal statutes, for which they have been convicted in a court of law (the suspension being triggered by PennDOT's receipt of a certified record of the person's

---

[31] *Heller v. Doe*, 509 U.S. 312, 319-21 (1993) (quotations, alterations, and citations omitted).

[32] *Id.* at 321.

[33] *United States Department of Agriculture v. Moreno*, 413 U.S. 528, 534 (1973) (invalidating law making ineligible for certain benefits any household containing individuals unrelated to each other, which was apparently targeted at hippies). However, the Supreme Court upheld a zoning ordinance limiting the number of unrelated persons who may occupy a single-family dwelling as bearing a rational relationship to a permissible state objective. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 8 (1974).

[34] *United States v. Windsor*, 570 U.S. 744, 770, 772 (2013) (invalidating law that "identif[ied] a subset of state-sanctioned marriages and ma[d]e them unequal").

7

conviction).[35] In other words, the Pennsylvania statute "does not circumscribe a class of persons characterized by some unpopular trait or affiliation, [and] it does not create or reflect any special likelihood of bias on the part of the ruling majority."[36]

Plaintiffs allege that they are similarly situated to all people convicted of crimes but are treated differently because of legislative animus against drug crimes.[37] But even if this is so, Plaintiffs offer no support for the idea that a legislature cannot treat different crimes differently, and of course the criminal statutes set forth different penalties for different crimes and different degrees of culpability within the same crime. It is worth noting that the legislative history reflects not a purpose to discriminate, but to impose a suspension upon all those convicted of drug offenses as a message to young people of the consequences of drug use and as a meaningful penalty upon people who could afford to pay a fine and would not be at risk of imprisonment for a small amount of narcotics.[38]

---

[35] Plaintiffs also argue that the statute is irrational because by including suspensions for convictions under the laws of other states, it "was written to punish drug activity not considered illegal by the Commonwealth." Pls.' Opp. Mot. Dismiss at 7. Plaintiffs do not allege that they have such convictions from other states, or that other states criminalize activity related to illegal narcotics that Pennsylvania does not.

[36] *New York City Transit Authority v. Beazer*, 440 U.S. 568, 593 (1979) (holding that the transit authority did not violate equal protection by barring methadone users from any employment). The Court notes that Plaintiffs cited to the dissent in this case, without stating that it was not the holding of the Court. Pls.' Opp. Mot Dismiss at 8.

[37] Pls.' Opp. Mot. Dismiss at 3. Plaintiffs analogize the classification to a zoning ordinance barring a group home for those with mental disabilities struck down by the Supreme Court in *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432 (1985). In that case, the discrimination was based on the status of the residents, whereas Plaintiffs here have been convicted of criminal actions that directly relate to the basis for the suspension. In other words, to analogize the case to *Moreno*, also relied upon by Plaintiffs, the plaintiffs in *Moreno* could not be denied food stamp benefits because they were hippies (as "it is not a crime to be a hippie," *Hughes v. Rizzo*, 282 F. Supp. 881, 884 (E.D. Pa. 1968)), but if they committed acts that were generally disqualifying for benefits, their status would not be the basis for the negative action.

[38] Pennsylvania House of Representatives Regular Session, Reg. Sess. No. 76, 173 General Assembly at 2101-05 (Dec. 12, 1989) (rejecting proposed amendment to allow discretion in imposing suspensions despite concerns of some legislators that the suspensions would be more burdensome upon those in rural areas without access to public transportation). The legislative history cited by Plaintiffs with regard to a 1999 amendment to the statute related only to the suspension of licenses for threats at schools. Pennsylvania Senate Regular Session, PA. S. Jour., 199 Reg. Sess. No. 27, 183rd General Assembly (May 4, 1999).

The "legislative classification must be sustained, if the classification itself is rationally related to a legitimate governmental interest."[39] The governmental interests in receiving full federal funding and discouraging the violation of narcotics laws are unquestionably legitimate, even if the law is not the only or most desirable way to achieve these goals. The Court is limited to determining whether there is a rational basis for the legislation, not if it is wise or even necessarily effective. The statute meets this deferential standard.[40]

### B.     Due Process

The Fourteenth Amendment also provides that no state shall "deprive any person of life, liberty, or property, without due process of law."[41] Due process can be procedural or substantive. In analyzing a procedural due process claim, the first step is to determine whether the nature of the interest is one within the contemplation of the "liberty or property" language of the Fourteenth Amendment.[42] If it is, "the question then becomes what process is due to protect it."[43] Substantive due process "limits what the government may do regardless of the fairness of the procedures that it employs to guarantee protection against government power arbitrarily and oppressively exercised."[44]

#### 1.     **Procedural Due Process**

Plaintiffs allege that they have a property interest in their ability to drive, that the license suspension occurs automatically, without any process at all, and that the suspension does not

---

[39] *Moreno*, 413 U.S. at 533.

[40] *Shoul v. Commonwealth, Dep't of Transp.*, 173 A.3d 669, 681 (Pa. 2017). The Court does not rely on the Pennsylvania Supreme Court's analysis of federal constitutional issues, but it offers useful perspective on the interpretation of state laws and lawmaking.

[41] U.S. Const. amend. XIV.

[42] *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (citation omitted).

[43] *Id.* (citation omitted).

[44] *Holland v. Rosen*, 895 F.3d 272, 292 (3d Cir. 2018) (quotation marks, alterations, and citations omitted).

determine "which people with drug convictions fit criteria related to the state's interest in regulating driving."[45] The law is clear that Plaintiffs do have a protected property interest.[46]

> [T]he Due Process Clause applies to the deprivation of a driver's license by the State: "Suspension of issued licenses . . . involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment."[47]

The amount of process that must be afforded depends upon the circumstances, and the Supreme Court has held that a pre-revocation hearing is not required where the licensee "had the opportunity for a full judicial hearing in connection with each of the traffic convictions on which the [revocation] decision was based," and had not "challenged the validity of the those convictions or the adequacy of his procedural rights at the time they were determined."[48] Plaintiffs here do not argue that they were denied due process in their criminal cases that led to their convictions, and the Court therefore holds that a pre-suspension hearing was not required.[49]

With regard to the suspension process itself, Pennsylvania law provides that any person "whose operating privilege has been . . . suspended . . . shall have the right to appeal" to the Pennsylvania state courts.[50] The "filing and service of a petition for appeal . . . shall operate as a supersedeas until final determination of the matter by the court vested with the jurisdiction of such appeals."[51] Drivers are entitled to a de novo hearing before the trial court.[52] In certain

---

[45] Compl. ¶¶ 127-128 (emphasis omitted).

[46] The Court notes that Mr. Williams had a learner's permit, not a license, but will assume for purposes of the motion to dismiss that he had a protected property interest.

[47] *Dixon v. Love*, 431 U.S. 105, 112 (1977) (quoting *Bell v. Burson*, 402 U.S. 535, 539 (1971)).

[48] *Id.* at 113.

[49] The law provides for a stay of suspension upon request while an appeal from a criminal conviction is pending. 75 Pa. C.S. § 1555.

[50] 75 Pa. C.S. § 1550(a).

[51] 75 Pa. C.S. § 1550(b)(1)(i).

10

circumstances, the Pennsylvania courts have reinstated the operating privileges suspended under § 1532(c).[53] The right to appeal was included in the notices of suspension sent to Plaintiffs.[54] Plaintiffs do not allege that they attempted to appeal the suspensions.[55] As Plaintiffs had the opportunity to appeal the suspensions, and to stay the suspension while the appeal was pending, and as there are grounds upon which such appeals may succeed, they have not alleged a claim for violation of procedural due process.[56]

### 2. **Substantive Due Process**

Plaintiffs allege they have a fundamental substantive due process right to local, or intrastate, travel, and have been "deprived of their ability to reliably travel by automobile" to accomplish essential tasks, which cannot feasibly be done by other modes of transportation.[57] The Court of Appeals for the Third Circuit has recognized a substantive due process right to intrastate travel in the form of "the right to travel locally through public spaces and roadways."[58] Although "the contours of this right are not clearly defined," it generally has been held to be "co-extensive with the right to interstate travel."[59] And while "the law with respect to the constitutional implications of the right to travel is unsettled and in need of clarification,"[60] the

---

[52] *Rutkowski v. Commonwealth of Pa.*, 780 A.2d 860, 862 (Pa. Commw. Ct. 2001).

[53] *See Degrossi v. Commonwealth of Pa.*, 174 A.3d 1187, 1190 (Pa. Commw. Ct. 2017).

[54] *See* Defs.' Mot. Dismiss [Doc. No. 29] Exs. A-B. The Court may consider the notices of suspension as they were expressly referenced in the Complaint.

[55] *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate.")

[56] *McDaniel v. Collins*, 615 F. App'x 91, 93 (3d Cir. 2015).

[57] Compl. ¶¶ 131-34.

[58] *Lutz v. City of York*, 899 F.2d 255, 268 (3d Cir. 1990).

[59] *McCool v. City of Phila.*, 494 F. Supp. 2d 307, 312, 313 (E.D. Pa. 2007).

[60] *Maldonado v. Houstoun*, 157 F.3d 179, 185 (3d Cir. 1998).

case law is consistent in holding that the denial of a driver's license does not violate the fundamental right to interstate travel, and that there is no fundamental right to drive.[61] Plaintiffs have not alleged a basis for differentiating between the right to travel intrastate and the right to travel interstate in this regard.[62] Thus, the right to intrastate travel is not infringed because Plaintiffs are unable to drive themselves in a car during the limited term of a suspension.[63]

## IV. CONCLUSION

The Court in no way minimizes the burdens imposed by the suspension of a driver's license, and Plaintiffs raise strong policy arguments against continued enforcement of the Pennsylvania statute that they may raise with the Governor and the legislature.[64] But as the late Honorable Louis H. Pollak wrote, "[i]t is not, however, the province of a federal court to guard states from unwisdom unless that unwisdom transcends constitutional limitations. A state law that 'may be unwise, improvident, or out of harmony with a particular school of thought' is not thereby unconstitutional. In the strong words of Justice Frankfurter, '[m]uch that should be rejected as illiberal, because repressive and envenoming, may well be not unconstitutional.'"[65] This Court does not make policy decisions and takes no position as to whether the current framework is wise or socially beneficial. That is a decision to be made by the Pennsylvania legislative and executive branches in the first instance. The Court only determines that as a

---

[61] *Miller v. Reed*, 176 F.3d 1202, 1206 (9th Cir. 1999). The Court of Appeals for the Third Circuit, citing *Miller*, has held that the denial of a driver's license does not implicate the right to interstate travel. *Abuhouran v. Social Sec. Admin.*, 291 F. App'x 469, 473 (3d Cir. 2008).

[62] Indeed, although they focus on intrastate travel, Plaintiffs allege in the Complaint that the statute impinges upon their right to both interstate and intrastate travel. Compl. ¶ 9.

[63] *Fowler v. Johnson*, No. 17-11441, 2017 WL 6379676, at *8 (E.D. Mich. Dec. 14, 2017).

[64] It appears that the Pennsylvania General Assembly is considering legislation on these issues *See* Pennsylvania House Bill 163 and House Resolution 76 (text and history available at http://www.legis.state.pa.us).

[65] *Brian B. v. Commonwealth of Pa. Dep't of Educ.*, 51 F. Supp. 2d 611, 636 (E.D. Pa. 1999) (quoting *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 488 (1955) and *Dennis v. United States*, 341 U.S. 494, 517, 556 (1951) (Frankfurter, J., concurring)), *aff'd*, 230 F.3d 582 (3d Cir. 2000).

matter of law Plaintiffs have not alleged a violation of rights secured under the Constitution of the United States, and therefore, the Complaint must be dismissed.